UNITED STATES of America, Plaintiff–Appellee,

v.

**Darian LYONS, Defendant–Appellant.**

No. 92–4056.

United States Court of Appeals, Tenth Circuit.

April 27, 1993.

Rehearing Denied July 23, 1993.*

---

* Editor's Note: The order denying rehearing and Judge Godbold's dissent from denial of rehearing will be published, see 1993 WL 275339.

Randall Gaither, Salt Lake City, UT, for defendant-appellant.

Tiffany Romney, Asst. U.S. Atty. (Tena Campbell, Asst. U.S. Atty. and Daniel Jordan, U.S. Atty., with her on the brief), Salt Lake City, UT, for plaintiff-appellee.

Before EBEL, GODBOLD,[†] and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Defendant-appellant Darian Lyons was convicted of two counts of transporting stolen property in connection with the theft of computer equipment from the UNISYS corporation. He appeals his conviction and sentence on various grounds. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and we affirm.

### Background

UNISYS, a computer and information technology company, employed Mr. Lyons from 1987 to 1990. While working at the UNISYS facility in Uxbridge, England, Mr. Lyons stole a UNISYS U6000/50 computer and associated components, which he later sent to a post office box in Utah. Mr. Lyons returned to the United States, retrieved the equipment, and began working for UNISYS at its Salt Lake City office. That office then experienced a series of thefts of equipment compatible with the U6000. After quitting his job with UNISYS, Mr. Lyons transported

---

[†] The Honorable John C. Godbold, Senior United States Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

the stolen equipment to his new address in Massachusetts.

An FBI investigation resulted in execution of a warrant to search Mr. Lyons' Massachusetts home, where agents found most of the stolen equipment, including hard disks belonging to UNISYS. Some time after seizing the equipment, and without first obtaining a separate warrant, FBI agents supervised a UNISYS technician who searched the contents of the hard disks. The technician discovered several valuable proprietary programs, apparently also stolen from UNISYS, stored on the disks.

A grand jury returned an indictment on one count of transporting stolen property across international borders and one count of transporting stolen equipment across state lines. *See* 18 U.S.C. § 2314. A jury convicted Mr. Lyons on both counts, and the district court imposed a sentence of thirty-nine months under the Sentencing Guidelines.

### Discussion

Mr. Lyons' appeal raises numerous issues, many of them frivolous. However, two issues merit discussion: (1) whether the discovery of the software on one of the stolen hard drives was the product of a Fourth Amendment violation, and (2) whether the value of stolen computer software may be included in calculating a sentence under U.S.S.G. §§ 1B1.3 and 2B1.2.

### I. Discovery of Stolen Computer Software During The Search Of The Hard Drive

Mr. Lyons claims that the discovery of the computer software was the product of an unreasonable search. Our analysis of this question raises but one issue: whether Mr. Lyons had an objectively reasonable expectation of privacy in the contents of the hard drive. Although the district court did not base its denial of the motion to suppress on this ground, the facts as they pertain to this inquiry are uncontroverted and we consider this threshold inquiry de novo. *See United States v. Rubio–Rivera,* 917 F.2d 1271, 1274–75 (10th Cir.1990).

After being seized by law enforcement authorities, the stolen hard disks along with other items of seized personal property were taken to the FBI evidence room. A few days later, a UNISYS employee, while performing an inventory of the items seized, searched the contents of the disks and discovered proprietary software.

Because Fourth Amendment rights are personal, Mr. Lyons, as the proponent of the motion to suppress, had the burden of proving that his own Fourth Amendment rights were violated by the search in question. *Rakas v. Illinois,* 439 U.S. 128, 131–34, 99 S.Ct. 421, 424–26, 58 L.Ed.2d 387 (1978); *United States v. Soto,* 988 F.2d 1548, 1552–53 (10th Cir.1993). A search only violates a defendant's Fourth Amendment rights if a defendant demonstrates that he or she had an actual, subjective expectation of privacy in the property searched, and if the defendant establishes that society would recognize that subjective expectation as objectively reasonable. *Minnesota v. Olson,* 495 U.S. 91, 95, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990); *Smith v. Maryland,* 442 U.S. 735, 740–41, 99 S.Ct. 2577, 2580–81, 61 L.Ed.2d 220 (1979). Because expectations of privacy derive in part from the right to exclude others from the property in question, lawful possession is an important consideration in determining whether a defendant had a legitimate expectation of privacy in the area searched, i.e. the hard disks. *See United States v. Salvucci,* 448 U.S. 83, 91, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *Rakas,* 439 U.S. at 143 n. 12, 99 S.Ct. at 430–31 n. 12; *United States v. Abreu,* 935 F.2d 1130, 1133 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991).

Those portions of the record furnished by the parties in their appendices reflect that no attempt was made to show that Mr. Lyons had any rightful claim to the hard disks that were seized pursuant to the warrant. *See United States v. Arango,* 912 F.2d 441, 445 (10th Cir.1990) (although legal documentation of lawful possession not always required, proponent of motion to suppress "must at least state that he gained possession from the owner or someone with the authority to grant possession"), *cert. denied,* —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991). In the absence of any

evidence of any right or interest in these items, Mr. Lyons has failed to meet the threshold requirement of demonstrating an expectation of privacy in the property searched. Under the circumstances presented, Mr. Lyons demonstrated no actual, subjective expectation of privacy and, in the absence of such a showing, we do not reach the issue of whether an expectation of privacy in the hard disks would have been objectively reasonable. *See United States v. Rascon,* 922 F.2d 584, 587 (10th Cir.1990), *cert. denied,* ─── U.S. ───, 111 S.Ct. 2037, 114 L.Ed.2d 121 (1991); *United States v. Erickson,* 732 F.2d 788, 791 (10th Cir.1984). We affirm the district court's denial of the motion to suppress.

## II. Stolen Computer Software And The Sentencing Guidelines

Mr. Lyons asserts that he was convicted of transporting only stolen computer *hardware,* and that our decision in *United States v. Brown,* 925 F.2d 1301 (10th Cir.1991), precludes consideration of the value of stolen computer *software* in calculating his sentence. We disagree.

Sentencing on a charge of transporting stolen property requires calculation of the total value of the property stolen. U.S.S.G. § 2B1.2(b)(1). The district court calculated the total value of the stolen property at $292,000: $27,000 for the value of the hardware and $265,000 for the software. We review the court's factual findings supporting calculation of loss under the clearly erroneous standard, but review de novo questions of law regarding the application of the Sentencing Guidelines. *United States v. Smith,* 951 F.2d 1164, 1166, 1170 (10th Cir.1991).

■ As an initial matter, we question Mr. Lyons' assertion that he was not convicted for the theft of software. The court granted Mr. Lyons' motion to strike the phrase "and computer software" from the indictment as surplus language. The remaining words of the indictment charged Mr. Lyons with transportation of stolen "computer components and computer equipment." During the hearing on the motion to strike, the parties discussed how the changes would affect the remaining charges, which concluded:

The Court: And I say, well, why are [the words "and computer software"] surplus language? And the only argument it seems to me is they're surplus language because all of these are computer components or computer equipment. They're embraced by the larger term, and thus we don't need the lesser, more specific term. Defense Counsel: Your honor, I've consulted with my client, and we accept the court's interpretation.

.     .     .     .     .

The Court: But namely, when we're talking about computer software, that that's embraced within the larger terms of "computer components" and "computer equipment"?

Defense Counsel: That's correct. . . .

Aplee.App. at 26–27. Given this concession by defense counsel, we find that the language of the modified indictment included software offenses. Convicted of transporting both stolen hardware and software, Mr. Lyons' sentence properly aggregated the total value of these items.

■ We believe that the verbal exchange between defense counsel and the court demonstrates that all parties accepted that the software offenses would still remain in the indictment, arguments to the contrary notwithstanding. We nonetheless recognize that the district court's written order striking the language from the indictment did not specify that the remaining language included software. Therefore, we hold in the alternative that even if the charges of conviction did not include transportation of stolen software, consideration of unconvicted software offenses would still have been appropriate at sentencing.

■ The Guidelines permit the sentencing court to look beyond the charges of conviction in computing a sentence. *United States v. Underwood,* 982 F.2d 426, 429 (10th Cir.1992). Guideline § 1B1.3 broadly defines relevant conduct, permitting consideration of dismissed charges. *United States v. Saucedo,* 950 F.2d 1508, 1518–19 (10th Cir.1991). A court should consider defendant's acts beyond the charges of conviction if those acts were part of the same course of conduct or

common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(2) & comment. (n. 2 & backg'd). Culpability for relevant conduct need only be shown by a preponderance of evidence. *United States v. Frederick*, 897 F.2d 490, 491–93 (10th Cir.), *cert. denied*, 498 U.S. 863, 111 S.Ct. 171, 112 L.Ed.2d 135 (1990). Our review of the record satisfies us that the preponderance of the evidence supports the trial court's conclusion that Mr. Lyons was criminally culpable for offenses related to the software.

Mr. Lyons contends that even if he stole the software, our decision in *Brown* precludes consideration of its value. In *Brown*, we applied the Supreme Court's decision in *Dowling v. United States*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) to computer software, and held that the intangible intellectual property of a computer program standing alone cannot constitute goods, wares or merchandise within the meaning of 18 U.S.C. § 2314. *Brown*, 925 F.2d at 1308. The fact that Mr. Lyons stole the software in conjunction with the theft of tangible hardware distinguishes this case from *Brown*. *Brown* recognizes that the theft of intangible intellectual property in conjunction with the theft of tangible property falls within the ambit of § 2314. *Id.* at 1307–08 n. 14. Unlike the present case, there was no evidence in *Brown* that defendant was involved in the physical theft or transportation of stolen tangible property.

In an age where the intangible intellectual property value of goods may vastly exceed the intrinsic worth of accompanying tangible goods, application of the letter and intent of the Sentencing Guidelines mandates that courts include intangible value when thefts of tangible objects occur. For example, the Guidelines assess value for criminal copyright infringement on the basis of the market value of the infringing items, even though that value arises from its worth as intangible intellectual property. U.S.S.G. § 2B5.3. This market value may far exceed the loss or gain due to the offense. *Id.* The same approach is used for calculating the value of intercepted transmissions prosecuted under the Electronic Communications Act of 1986, in which case the intercepted transmissions are completely intangible. *Id.* comment.

 We also reject Mr. Lyons' contention that the court overestimated the value of the software. Testimony at the sentencing hearing indicated that $265,000 would have been the cost of a single sublicensed copy of the items stolen. The court's calculation of value was not clearly erroneous.

### III. The Validity Of The Warrant

Mr. Lyons also challenges the validity and scope of the warrant and subsequent search. Contrary to Mr. Lyons' allegations, the government presented the magistrate with probable cause to issue the warrant, the warrant was not the product of material misrepresentations of fact, the warrant specifically identified the evidence sought, and the scope of the search did not exceed the scope of the warrant. We therefore reject Mr. Lyons' challenges to the warrant and the subsequent search.

AFFIRMED.